# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMBER MALCOM, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) | NO. CIV-13-0754-HE |
| WELLS FARGO BANK, N.A., a foreign corporation, | ) ) ) ) | |
| Defendant/Cross-Claim Plaintiff, | ) ) | |
| vs. | ) ) | |
| ERIK SANDERSON, | ) ) | |
| Cross-Claim Defendant. | ) | |

## ORDER

Plaintiff Amber Malcom filed this action against Wells Fargo Bank, N.A. ("Wells Fargo"), asserting both federal and state law claims. The claims arise out of defendant's alleged mishandling of the note and mortgage plaintiff and her former spouse, Erik Sanderson, executed when they purchased a home in Oklahoma City, Oklahoma. Plaintiff has filed a motion for partial summary judgment and defendant has filed a motion for summary judgment against plaintiff and a motion for default judgment on its crossclaim against defendant Sanderson.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a material fact is disputed or undisputed must

support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c).

Plaintiff does not even attempt in her motion to support her various factual assertions by reference to the materials described in Rule 56(c), and she appears to labor under the misapprehension that, as in answering a complaint, all that need be done is to assert or deny an alleged fact. The rule is otherwise. Plaintiff's motion for partial summary judgment will be denied.[1]

Defendant's motion will be granted in substantial part, as discussed below, but denied as to plaintiff's claim under the Fair Debt Collection Practices Act.

## Background

The background facts appear to be substantially undisputed,[2] but are complicated due to the largely contemporaneous nature of three different legal proceedings—the foreclosure

---

[1] *Plaintiff's motion is directed to her second and third claims, involving claims under the Real Estate Settlement Procedures Act and for wrongful negotiation of insurance checks. As discussed below in connection with defendant's motion, those claims fail even apart from the formal deficiencies in plaintiff's motion.*

[2] *Plaintiff explicitly admits most of the facts upon which defendant relies in its motion. As to those purportedly disputed, plaintiff's response largely fails to reference any evidence to support her position as to whether the fact is disputed.*

case, the divorce case between plaintiff and Sanderson, and plaintiff's lawsuit again the law firm representing Wells Fargo in the foreclosure.

On May 30, 2003, plaintiff and Sanderson executed a note and mortgage in conjunction with their purchase of the home (the "property"), located at 14509 S. Robinson Avenue in Oklahoma City, Cleveland County, Oklahoma.[3] Wells Fargo eventually acquired the note and mortgage. On March 30, 2010, the law firm of Baer, Timberlake, Coulson & Cater, P.C. ("Baer Timberlake") filed a foreclosure proceeding on defendant's behalf in Cleveland County. Plaintiff filed an answer and counterclaim. She acknowledges her filing "delayed and deterred" the property's foreclosure and that defendant could not proceed to a sheriff's sale until the counterclaims she asserted were resolved.

In the meantime, plaintiff had filed for divorce from Sanderson. Her 2008 filing in Cleveland County district court eventually resulted in a final divorce decree being entered on March 21, 2011. The divorce decree awarded Sanderson the real property underlying this litigation, but awarded plaintiff a judgment lien on the property in the amount of $23,000.

On April 3, 2012, while the foreclosure was pending, Allstate Insurance Company sent a notice of non-renewal to Erick Sanderson at the S. Robinson Avenue address, informing him that the homeowner's insurance policy currently in effect would not be renewed and would be terminated as of May 30, 2012. Notice that the insurance was going

---

[3]*Page references for briefs and exhibits are to the CM/ECF document and page number. For example, the last page of the Journal Entry of Judgment filed on August 13, 2012, which is Exhibit 11 to defendant's brief in support of its summary judgment motion is referred to as Exhibit 40-11, p. 6.*

to lapse was also sent to Wells Fargo.[4]

On June 6, 2012, defendant sent a notice to plaintiff and Sanderson at the address of record provided by the borrowers, advising them that their hazard insurance had expired.[5] On July 11, 2012, defendant sent a letter to plaintiff and Sanderson at the same address stating it had previously notified them that it did not have evidence that they had a homeowner's policy protecting their property as required by the terms of their mortgage and that lender-placed insurance would be purchased. The next month, on August 25, 2012, defendant sent another notice to the same address, which explained that lender-placed insurance had been purchased, along with a copy of the policy, which named Wells Fargo as the Named Insured and plaintiff and Sanderson as Additional Insureds.

A Journal Entry of Judgment, to which plaintiff agreed, was entered in the foreclosure action on August 13, 2012. Plaintiff agreed to dismiss her counterclaims in exchange for the entry of only an *in rem* judgment against her.[6] The next month, on September 19, 2012, plaintiff sued the Baer Timberlake law firm in Stephens County District Court, alleging that

---

[4]*Plaintiff states that she cannot admit or deny this and defendant's fact no. 20. However, as noted above, that is not enough to dispute a fact and therefore both are considered undisputed for purposes of the motion. Fed.R.Civ.P. 56(e)(2).*

[5]*Plaintiff does not dispute that the notice was sent to the address of record, but asserts that defendant also failed to send it to her in Marlow. Plaintiff responds to defendant's fact nos. 11, 12, and 14, stating that her "address of record was in Marlow, Oklahoma" and "Defendant was apprised that the Plaintiff lived in Marlow, Oklahoma." Doc. #46, p. 3. However, she fails to offer any evidence substantiating these assertions.*

[6]*Plaintiff states she was "forced/coerced into agreeing to said judgment." Doc. #46, p. 4, ¶4. Yet she offers no evidence to support that assertion or to otherwise controvert the judgment defendant has submitted, which plaintiff executed and which states above her signature and that of opposing counsel: "Agreed as to Form <u>and Content</u>." Doc. #40-11, p. 6 (emphasis added).*

certain acts taken during the foreclosure action violated the Fair Debt Collection Practices Act, constituted malicious prosecution, intentionally inflicted emotional distress, and amounted to financial abuse and waste.

The property, which was unoccupied at the time, was destroyed by a tornado on May 20, 2013. That resulted in an insurance claim being submitted to American Security Insurance Company, the insurer which issued the lender-placed insurance. On June 17, 2013, the insurer issued two checks to plaintiff, Sanderson, and defendant, totaling $184,416.71. Defendant deposited the checks in a restricted escrow account. They were kept separate from defendant's own funds and remained in the restricted escrow account until they were withdrawn later to pay off the loan. Amounts in excess of the loan payoff were eventually refunded to plaintiff and Sanderson.

On June 27, 2013, Wells Fargo sent to plaintiff for signature a form which would authorize the application of the insurance proceeds to pay off the loan. Plaintiff did not sign the form at that time but, on July 22, 2013, filed this case. On July 27, 2013, Wells Fargo responded to an inquiry from plaintiff's attorney and informed plaintiff that the checks had been deposited in the restricted escrow account.

On August 15, 2013, a special execution was issued in the foreclosure case setting a sheriff's sale for October 2, 2013. It is undisputed that Baer Timberlake, the foreclosure counsel, made the decision to issue the special execution without instruction from defendant. On August 16, 2013, plaintiff and Sanderson executed the written request for the insurance proceeds to be used to pay off the loan. Defendant issued a check to itself on August 21,

5

2013, to pay off the loan.

Plaintiff's name was published in two newspapers on August 22, 2013, and August 24, 2013, in Oklahoma City and Norman in conjunction with the sheriff's sale. The notice of sheriff's sale was recalled on August 28, 2013.

On August 26, 2013, defendant issued a check to plaintiff and Sanderson in the amount of $22,469.54, representing the excess insurance over the claimed loan balance. Both plaintiff and Sanderson endorsed the check. Soon after the $22,469.54 check cleared, Sanderson paid plaintiff her $23,000 share of the equity in the property and plaintiff released her judgment lien. Plaintiff then moved on September 13, 2013, to amend her petition in the Stephens County lawsuit against Baer Timberlake to include claims based on the issuance of the special execution and publication of notice of the sheriff's sale in the foreclosure action. On September 25, 2013, the state court judge in the foreclosure action, on motion of Wells Fargo, vacated both the judgment previously entered and the sheriff's return of special execution and order of sale, restored the note and mortgage and ordered them redelivered to Wells Fargo as the owner and holder thereof. The judge then dismissed the foreclosure action without prejudice. Doc. #40-22.[7] On August 27, 2013, plaintiff quitclaimed all of her right, title and interest in the property to Sanderson.

On February 11, 2014, plaintiff and Baer Timberlake entered into a settlement

---

[7]*Plaintiff objects to this fact statement asserting that "Defendant did dismiss the lawsuit, but wholly failed to obtain proper signatures and lied to the court. Defendant stated that all parties were in agreement." Doc. #46, p. 4, ¶8. Plaintiff did not substantiate her statements with any evidence and defendant misstated what occurred. The state court judge, not defendant, dismissed the case on Wells Fargo's application.*

6

agreement that settled "claims which were or might have been asserted against one another by the parties." Exhibit 23.[8] On March 12, 2014, plaintiff released her judgment lien against the property arising out of the divorce proceeding. The release provided that plaintiff released and quitclaimed all right, title and interest in and to the property located at 14509 South Robinson Avenue, Oklahoma City, Oklahoma, that she might have acquired by virtue of the divorce proceeding. Doc. #40-24.[9]

Analysis

Plaintiff asserts federal law claims against defendant under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. She also asserts state law claims for conversion, negligence per se, breach of fiduciary duty, constructive fraud, actual fraud, intentional infliction of emotional distress, wrongful foreclosure, unjust enrichment, and for violation of Oklahoma's version of the Uniform Commercial Code.

The court's task has been greatly complicated by the ragged briefing of the parties. Plaintiff's submissions do not come remotely close to meeting the standards for a summary judgment response. Defendant's brief includes inaccurate case citations and, as suggested below, an absence of proofreading.

---

[8]*In her response to defendant's motion, plaintiff explicitly admits defendant's fact #36 which describes the Baer Timberlake settlement. However, she apparently disputes whether the settlement agreement was actually implemented, asserting she dismissed and then refiled the suit.*

[9]*Citing Exhibit 25, defendant asserts that on March 17, 2014, plaintiff dismissed with prejudice the lawsuit she filed against Baer Timberlake in Stephens County. However, the last exhibit attached to defendant's brief is Exhibit 24.*

7

Real Estate Settlement Procedures Act

Plaintiff contends defendant failed to comply with RESPA's requirement that the mortgage servicer send the borrower written notices regarding any changes in insurance coverage for the property. *See* 12 U.S.C. § 2605(k) and (l). However, as defendant points out, the lender-placed insurance involved here was purchased in 2012 and the RESPA requirements upon which plaintiff relies were not effective until January 10, 2014. *See* Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013) (explaining that in 2013, the Bureau of Consumer Financial Protection issued a final rule implementing the Dodd-Frank Wall Street Reform and Consumer Protection Act amendments to RESPA and amending Regulation X, RESPA's implementing regulation, with an effective date of January 10, 2014); Ali v. Wells Fargo Bank, N.A., 2014 WL 345243, at *2 (W.D.Okla. Jan. 24, 2014) (order granting partial motion to dismiss); *see generally* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed.Reg. 10696 (Feb. 14, 2013). Plaintiff ignores this argument in her response brief, focusing instead on defendant's failure to send her notices to an address she contends it "clearly knew" was her "correct address." Doc. #46, p. 6. That is not enough, though, to make defendant liable under RESPA for requirements that did not become effective until January 2014.

Even if Sections 2605(k) and (l) had been in effect in 2012, plaintiff's RESPA claim would still fail due to plaintiff's lack of proof. She did not offer any evidence demonstrating either that defendant "was clearly apprised of [her] address," Doc. #46, p. 5, or that she provided Wells Fargo with notice of her change of address by first class mail as required by

8

the mortgage, so that it had the information it needed to comply with any applicable RESPA notice requirements.[10] *See* Doc. #40-1, p. 5, ¶ 13. Conclusory, unsubstantiated statements in a brief are insufficient to create a material fact dispute.

Summary judgment will therefore be entered in defendant's favor on plaintiff's RESPA claims.[11] As plaintiff's state law "negligence per se" claim is based on a claimed violation of RESPA, summary judgment will also be entered as to that claim.

Fair Debt Collection Practices Act

Plaintiff alleges defendant also committed various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. Defendant has moved for summary judgment as to this claim on the sole basis that it is not a "debt collector" within the meaning of the Act.[12] It cites Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093(8th Cir. 2008) and Perry v. Stewart Title Co., 756 F.2d 1197 (5th Cir. 1985), arguing it is not a "debt collector" because the term does not include "the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry, 756 F.2d at 1208. In fact, Poehl does not include the quotation attributed to it in defendant's brief and deals with the Fair Credit Reporting Act,

---

[10]*Plaintiff is not challenging the substance of the notice that was given, but only that she personally was not given notice. See generally Doc. Nos. 40-9, 40-10, 40-12.*

[11]*The court finds it unnecessary to consider defendant's alternative argument – that it complied with RESPA's notice requirements.*

[12]*What the defendant actually said in its brief is this: "Because Defendant is not a "debt collector," but was Defendant's creditor and mortgage servicer, the FDCPA does not apply ...." Doc. #40 at 30. That statement makes zero sense. Presumably, it meant to say that defendant was the plaintiff's creditor.*

9

not the FDCPA. However, assuming the quoted language states the law, defendant is still not entitled to summary judgment. None of the facts proffered by defendant address when the loan was acquired by the bank or whether the loan was in default at that time, and plaintiff has offered some evidence that the debt was in default long before the foreclosure proceeding was commenced. Further, while neither party addresses the significance of it, there is evidence in the record indicating that defendant serviced and attempted the collection of this loan in the name of Wells Fargo Home Mortgage, rather than in the bank's own name.[13] *E.g.*, Doc. #40-9. While defendant is, as it asserts, plaintiff's creditor, "the term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C.A. § 1692a. Here, the evidence potentially triggers that definitional provision. *See* Doc. # 46-3; *see also* Doc. Nos. 40-9, p. 3, 40-10, p. 3, 40-16 (Fair Debt Collection Practices Act Disclosures). Defendant's motion for summary judgment on the FDCPA claim will be denied.[14]

State law claims

Plaintiff's remaining claims against defendant are based on Oklahoma state law. Several of them revolve around plaintiff's objection to defendant's holding the two insurance checks in the restricted escrow account without having first obtained the endorsements of

---

[13]*Wells Fargo Home Mortgage is apparently a division of defendant. See Doc. #40-10.*

[14]*Except as referenced elsewhere in this order, the court expresses no view as to whether the particular actions relied on by plaintiff do or do not constitute substantive violations of the FDCPA. Rather, it concludes only that the basis upon which defendant sought summary judgment—that it is not a "debt collector"—does not warrant that result.*

10

plaintiff and Sanderson. As noted above, it is undisputed that, by the time defendant actually paid itself (i.e. paid off and discharged the note and mortgage from the escrowed funds), both plaintiff and Sanderson had signed an authorization for defendant to do so. Defendant's Fact #27. What plaintiff apparently objects to is defendant holding the checks in the escrow account prior to that. However, it is undisputed that the funds involved were proceeds from the lender-placed insurance and that the terms of issuance of that insurance included authorization for the "Mortgagee" (Wells Fargo) to act for the "Additional Insureds" (plaintiff and Sanderson) "in all matters pertaining to this insurance ...." Doc. #40-12. Similarly, the mortgage itself authorized the property insurer to make payment for any loss direct to the mortgagee, rather than jointly with the borrowers. Doc. #40-1, ¶4. These undisputed facts establish defendant's authority to hold the funds in escrow as it did, thus rendering summary judgment for defendant proper as to plaintiff's "U.C.C. claim,"[15] and the claims for conversion, breach of fiduciary duty,[16] and actual fraud.[17]

Plaintiff's constructive fraud claim is essentially based on defendant's failure to send

---

[15] *Plaintiff's second claim is described as "Violation of the Uniform Commercial Code." However, it appears the claimed "violation" of 12A Okla. Stat. § 3-110 is, in substance, nothing other than an alternative way of describing a claim for conversion.*

[16] *The breach of fiduciary duty claim would also fail as a matter of law, in light of the Oklahoma authorities indicating the bank/borrower relationship is ordinarily not fiduciary in nature, but is one of debtor and creditor. See First Nat'l Bank & Trust Co. of Vinita v. Kissee, 859 P.2d 502 (Okla. 1993) and Rogers v. Tecumseh Bank, 756 P.2d 1226 (Okla. 1988). Plaintiff makes no effort to distinguish those cases, relying instead on general statements in a case she described as F.D.I.C. v. Grant. However, as plaintiff did not provide a citation to any such case, either in the text of her brief or its table of authorities, it is unclear whether the case applies or not.*

[17] *It is unclear how many different theories plaintiff relies upon to support her "fraud" claim. However, as best the court can determine, the disposition of the insurance proceeds is central to each of them.*

her notices of the lender-placed insurance.[18] The same lack of proof that undermines plaintiff's RESPA claim precludes her constructive fraud claim.[19] Plaintiff offered no evidence creating a material question of fact as to whether defendant was aware of her then-current address or whether she provided Wells Fargo with notice of her change of address by first class mail as required by the mortgage. *See* Doc. #40-1, p. 5, ¶ 13.

Plaintiff's intentional infliction of emotion distress claim fails for two reasons. First, even viewing the evidence in the light most favorable to plaintiff, the alleged behavior of defendant falls short of the level of conduct required to impose liability for intentional infliction of emotional distress. *See* Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 n.2 (Okla.2002) ("'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'") (quoting Restatement (Second) of Torts § 46 (1977)). Dealing with a non-responsive or incompetent bureaucracy, such as is suggested by some of the submissions here, is no doubt frustrating but appears to be conduct short of what the Oklahoma courts would view as "extreme" or "outrageous." Second, plaintiff offers no evidence to create a material fact question as to whether the

---

[18]Plaintiff also asserts that "a special relationship of trust and confidence" was created between defendant and plaintiff upon defendant's purchase of the mortgage. However, as the court noted previously, the bank/borrower relationship is ordinarily one of debtor and creditor. *See supra* note 16.

[19]In her brief plaintiff also asserts as grounds for her constructive fraud claim that defendant charged her "ridiculous fees," including various attorney's fees. However, she offers no evidence to substantiate her assertions.

emotional distress she claims to have suffered was severe.[20] The court has nothing to review other than the unsupported statements in plaintiff's brief – no deposition testimony or affidavits or physician's statement. That is not enough to create a justiciable question as to the severity of any distress plaintiff suffered. Defendant's motion will be granted as to the claim for intentional infliction of emotional distress.

Plaintiff agrees that her wrongful foreclosure claim is akin to a malicious prosecution action. To prevail on a malicious prosecution claim under Oklahoma law, a plaintiff must "demonstrate: (i) the bringing of the action by the defendant, (ii) its successful termination in favor of the plaintiff, (iii) want of probable cause to bring the action, (iv) malice, and (v) damages." Pierce v. Gilchrist, 359 F.3d 1279, 1286 (10th Cir. 2004).

There are at least two problems with plaintiff's claim. First, it is not based on the actual foreclosure proceeding, but on the sheriff's sale which never occurred. Second, the foreclosure proceeding was not terminated in plaintiff's favor, but was dismissed without prejudice. Doc. #40-22. Summary judgment will be granted in defendant's favor on plaintiff's wrongful foreclosure claim.

Plaintiff's final claim, her unjust enrichment claim, is based on defendant's alleged failure to cooperate with plaintiff in the sale of the property "[d]uring the three years that the home sat in a foreclosure case." Doc. #12, p. 21. Plaintiff also contends that defendant was

---

[20]*In its motion, while defendant focuses on the second element of the tort – the requirement that the conduct must have been extreme and outrageous – which the court agrees plaintiff has not shown, defendant also argues that plaintiff "cannot overcome her burden of proving any of the above four elements" of her claim. Doc. #40, p. 28.*

"unjustly enriched by depositing the two Assurant insurance checks and holding the funds for more than sixty days." *Id.* This claim fails for several reasons. Plaintiff admits that her conduct prolonged the foreclosure proceedings and delayed the property sale and, by the time the insurance proceeds were deposited by defendant, plaintiff's interest in the property was limited to her $23,000 judgment lien. In addition, plaintiff did not offer evidence creating a fact question as to the benefit defendant actually gained at her expense. To the extent plaintiff asserts other grounds for the claim in her brief, in addition to those alleged in the amended complaint, they also are unsubstantiated. Summary judgment will be entered in defendant's favor on plaintiff's unjust enrichment claim.

Wells Fargo Banks's motion for default judgment

Wells Fargo filed a crossclaim against Erick Sanderson asking that he be directed to appear and assert any claims he might have based on the bank's handling of the foreclosure of the property or the other conduct alleged in plaintiff's amended complaint. Essentially, it seeks a declaratory judgment that it did not violate Mr. Sanderson's rights on any grounds paralleling the claims of plaintiff. It now seeks default judgment against Mr. Sanderson. The clerk previously entered default against Mr. Sanderson. Defendant's motion, to which Mr. Sanderson did not respond and thereby confessed, LcvR.7.1(g), is granted, thus barring any claim he might have against Wells Fargo arising out of these circumstances.

Conclusion

For the reasons indicated, plaintiff's motion for partial summary judgment [Doc. #44] is **DENIED**. Defendant's motion for summary judgment [Doc. #40] is **GRANTED** as to all

of plaintiff's claims other than the Fair Debt Collection Practices Act claim. Defendant's motion for default judgment against Erick Sanderson [Doc. #41] is **GRANTED**. Judgment as to these claims will be entered when the action is concluded as to all claims and parties. Fed.R.Civ.P. 54(b).

    **IT IS SO ORDERED**.

    Dated this 5th day of November, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE